UNITED STATES, Appellee

v.

Terry H. COX, Technical Sergeant
U.S. Air Force, Appellant.

No. 95–0873.
Crim.App. No. 30712.

U.S. Court of Appeals for
the Armed Forces.

Argued May 7, 1996.

Decided Sept. 27, 1996.

For Appellant: *Vaughan E. Taylor* (argued); *Colonel Jay L. Cohen* and *Captain Michael McIntyre* (on brief).

For Appellee: *Captain R. Scott Howard* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

In March 1993, contrary to his pleas, appellant was convicted by a general court-martial composed of officer members at Ellsworth Air Force Base, South Dakota, of attempted sodomy of K; rape of K; sodomy of K; taking indecent liberties with K; committing indecent acts on a child (4 specifications with K and 1 with C), in violation of Articles 80, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 920, 925, and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, 14 years' confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 42 MJ 647 (1995). We granted review of the following issues:

I

WHETHER PLAIN ERROR OCCURRED WHEN THE INSTALLATION'S CHIEF OF MILITARY JUSTICE TESTIFIED FOR THE GOVERNMENT THAT HE ASCERTAINED THAT THE CHARGES AGAINST APPELLANT HAD A LEGITIMATE BASIS, THUS DESTROYING THE APPEARANCE AND ALL ACTUALITY OF JUSTICE IN THE MILITARY SYSTEM.

II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL AND CONSTITUTIONAL ERROR BY ADMITTING STATEMENTS WHICH WERE NOT MADE FOR MEDICAL PURPOSES AND WHICH DID NOT CONTAIN ANY INDICIA OF RELIABILITY IN VIOLATION OF THE SIXTH AMENDMENT AS WELL AS THE MILITARY RULES OF EVIDENCE.

We hold that there was no plain error in admitting Major Treanor's testimony concerning the basis for charging and no error in admitting the victim's statement to other witnesses.

FACTS—Issue I

Appellant and his wife were married nearly 10 years at the time of trial. They had two children: K, born on November 16, 1985; and C, born on December 16, 1988.

The allegations in this case arose on July 25, 1992, when the neighbor's child, A, was found by her mother playing "gross" with K. A's mother found the children hugging in bed. When she questioned the girls, they said they were "playing house" and "French kissing." A's mother questioned K about how she learned about this. K said she would get in trouble for telling. K then said she learned this from movies her mom had thrown away. Shortly thereafter, A's mother called Mrs. Cox. When Mrs. Cox arrived at the neighbor's house, they questioned K further and learned that she had been sexually abused by her father. Mrs. Cox did not report it immediately. But after 5 days, when she found out that she might be an accessory for not reporting the abuse, she did report it.

Major Treanor was an assistant trial counsel in this case. Prior to the Article 32, UCMJ, 10 USC § 832, investigation, he went to Mrs. Cox's house. When he arrived, he laid eye-liner pencils on the coffee table. When C saw the eye-liner pencils, she started crying, put her fingers in her mouth, and doubled up in the fetal position. To assist, Mrs. Cox gave C her bunny, "Bea," because it might help. It did. C picked up the eye-liner pencil and placed it between the bunny's legs and said that is what Daddy did.

Prior to trial, the defense requested Major Treanor as a defense witness. Mrs. Cox was questioned on direct examination as to Major Treanor's interview with C but not as to the form and style of questioning. On cross-examination of Mrs. Cox, the defense sought to establish that Major Treanor's interview contaminated C's statement. This contamination was raised in the testimony of a de-

fense witness, Dr. Frank. Dr. Frank was concerned about fabrication, leading questions, and Major Treanor's role, including his giving a gift to the child.

Additionally, the defense cross-examined K concerning how long she spent with Major Treanor discussing her Article 32 testimony. K also admitted talking with the OSI, her therapist, and her mother about her testimony. She admitted that reviewing the allegations helped her practice her upcoming testimony.

The Government concedes that C's statements to her mother and Major Treanor were hearsay. It argues, however, that an objection was waived, and if not waived, that C's statement was admissible as an excited utterance or under the residual-hearsay rule. Answer to Final Brief at 16 & 17–18.

To rebut allegations of contaminating C by improper questioning, Major Treanor was called in the prosecution's rebuttal.

With regard to C, he testified on direct examination:

> I had to find out in my own mind if there was a legitimate basis for going forward with a charge involving this youngest Cox daughter against her father, I needed to find out if it was there or not.

On redirect examination, Major Treanor testified:

> We as prosecutors, we as attorneys, have an ethical obligation not to bring fraudulent charges, bad faith prosecutions, so on and so forth. In other words we have to be certain in our own mind that there is a legitimate factual basis to go forward with allegations against an accused. To do otherwise is not only a breach of faith as professionals, but is something which will undermine the entire judicial system, and that's why we have an obligation to get to the bottom of what the facts are.

There was no objection to the direct or redirect examination set out above.

The defense argues that it is troublesome when the Chief of Military Justice becomes a witness in the case, stating that "[h]ad Major Treanor been the trial counsel, the Rules of Professional Responsibility would not have allowed him to say such things." Appellant continues to argue:

> The conduct of an Air Force Judge Advocate during the course of a trial is subject to strict guidelines by the Air Force Rules of Professional Responsibility, rules of evidence, and case law. The Rules of Professional Responsibility prohibit an attorney in a case from making *extrajudicial public comments* regarding the guilt or innocence of a defendant [Rule 3.6(b)(4) ]. An *attorney may not act as an advocate in a case where he is likely to be a witness* [Rule 3.7]. An attorney *may not "assert personal knowledge* of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, . . . or the guilt or innocence of an accused. . . ." [Rule 3.4(e) ]. The alarming tendency of attorneys to either inadvertently become witnesses or to cross-examine witnesses based on personal knowledge was the subject of discussion at the Judicial Conference of the United States Court of Appeals for the Armed Forces, held in May 1995. Professor Imwinkelried discussed this phenomenon, noting that disciplinary authorities should enforce this prohibition with "special vigor." Professor Edward J. Imwinkelried, Ethics, The Judicial Conference, United States Court of Appeals for the Armed Forces, 1995, Sec. 12.8.

Final Brief at 8–9 (Emphasis added). The defense contends that his testimony "undercuts the clear intent of the ethical requirement placed on advocates." *Id.* at 11.

As to Issue II, the defense argues that the admission of C's statements to her mother, Major Treanor and Mrs. Hunter, was plain error. *Id.* at 17.

### DISCUSSION—Issue I

 The defense is correct that Air Force Rules of Professional Conduct 3.6(a) and (b)(4), TJAG Policy Letter 26 (Oct. 92), which is identical to the ABA Model Rule of Professional Conduct, prohibits an attorney from making public comments regarding a defendant's guilt or innocence. Rule 3.6 is designed to maintain the dignity of the profession and protect against unwarranted pretrial publicity. *See Nebraska Press As-*

*sociation v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). But this is not the case of a lawyer disseminating pretrial information to the public on matters that may impact upon court members.

■ Additionally, an attorney at trial may not assert a "personal opinion" or set forth a statement that they have personal knowledge of the facts. *See* Air Force Rule 3.4(e), which is identical to the ABA Rule. *See, e.g., State v. Reed*, 102 Wash.2d 140, 684 P.2d 699 (1984); *State v. Martin*, 41 Wash.App. 133, 703 P.2d 309, 312–13 (1985).

■ Mil.R.Evid. 103, Manual for Courts–Martial, United States (1995 ed.), provides that error may not be based on a ruling admitting evidence absent a timely objection. The plain-error doctrine applies when an appellant fails to object, but demonstrates that there was plain, clear, and obvious error that affected his substantial rights. *United States v. Curtis*, 44 MJ 106, 140 (1996).

■ We hold that the defense waived any objection to Major Treanor's testimony. His testimony was not a plain or obvious error that affected the substantial rights of appellant.

FACTS—Issue II

The defense argues that the judge erred by allowing inadmissible hearsay from at least three witnesses: Mrs. Carla Cox, the victim's mother; Ms. Kathy Hunter, a former schoolteacher and guidance counselor; and Major Treanor, the Chief of Military Justice.

At the Cox's home, when Major Treanor was trying to ascertain what the victim would say about the eyeliner pencils, Mrs. Cox provided a stuffed bunny to assist C, the victim, in describing what happened. Mrs. Cox testified that C put the pencil between the bunny's legs and said this is what Daddy did. Major Treanor testified, in rebuttal, about the same incident, repeating the actions of C. There was no objection to any of these statements.

Appellant's wife testified that both K and C had been to the hospital many times, and each time they expected to receive treatment to feel better. Mrs. Cox testified that she hired Ms. Hunter based on the suggestion of a friend. Ms. Hunter testified that she was "there to help them," and that they could talk about the things that were happening to them to feel better about themselves. She seeks to help children deal with their problems and their fears. She would introduce herself by her first name and then say she was there to help them. However, she did indicate that her small office had toys on the desk. She wore normal business suits, not a doctor's coat, and spent time playing with the children on the floor. She described her office as a "therapeutic office that has toys there for kids to play with and has a big easel board to draw on." Mrs. Cox explained to her daughters that they were going to see Ms. Hunter because she could help them.

The Court of Criminal Appeals addressed Ms. Hunter's testimony as follows:

> The military judge found that the children were taken by their mother to a "therapist or counselor" who "was going to help them with whatever problems they had." He also found that, based on their "many prior experiences with medical personnel ... they each did have some expectation of being helped by her, either to discuss their problems or at least to make them feel better about themselves."

42 MJ at 651. The court below concluded:

> We agree that Ms. Hunter's interviews of K and C were medically related. The appellant makes much of the fact that Ms. Hunter was in an office building, and it had "toys ... and ... a big easel board to draw on." The fact that her office deliberately displayed none of the attributes of a hospital is no more dispositive of the first prong of the test than the fact Ms. Hunter wore indistinctive, comfortable clothing. Rather, our focus must be on whether the statements were made for "medical" benefit.

> \* \* \*

> Ms. Hunter was a trained counselor and therapist, the two girls were taken to her

for help in overcoming the devastating effects of sexual abuse, and, in our view, that is sufficient "medical" help to meet the first prong of the test for Mil.R.Evid. 803(4).

42 MJ at 651. Regarding the second prong, the court below stated:

> The second prong focuses on the expectations of the children, but it "need not be based on the testimony of the child." [*United States v. Quigley*, 40 MJ 64, 66 (CMA 1994)]. Ms. Hunter testified she told K and C "this is your place" and she "was there to help." Taken alone, these statements do not show that K or C had any expectation of receiving medical benefit from talking with Ms. Hunter. Mrs. Cox testified, however, that she explained to the girls why they were going to see Ms. Hunter. She said she told K and C "we are going to go talk to somebody who could help us with what had happened to us ... that I didn't have the knowledge to be able to help her, to make her better, and that we needed help, and this counselor specialized in helping children who had to go through things like this, and that she would be better at it and she would be able to help us."
>
> The military judge's findings are fully supported by the evidence, and we adopt them. Based on the evidence, we find no abuse of discretion in admitting Ms. Hunter's testimony of hearsay statements. *Quigley*, 40 MJ at 66.

42 MJ at 651–52.

Ms. Hunter testified that, while counseling C, she said that her father "spanked her bottom" and then indicated that she had been spanked by her father on the buttocks and vagina with her pants off. These statements were admitted under the medical treatment exception to the hearsay rule over the objection of the defense counsel.

### DISCUSSION—Issue II

■ As to the statements to Mrs. Cox and Major Treanor, the Government argues that there was waiver and no plain error. In the alternative, it argues that the statements were admissible under Mil.R.Evid. 803(2) or 803(24). Both Mrs. Cox and Major Treanor testified that C was upset when she saw the eyeliner pencils. In Major Treanor's words, it was as if C had seen a vampire. The Government argues if these statements are not an excited utterance, they are so close in terms of reliability that they should be admitted under the residual hearsay exception.

As we indicated in *United States v. Grant*, 42 MJ 340, 343 (1995), while not qualifying as an excited utterance, the circumstances surrounding the statement may indicate trustworthiness. The emotional reaction of C and spontaneity of her statements and actions strongly suggest their trustworthiness. We need not address alternative grounds in this case. We hold that the admission of C's statements to Mrs. Cox and Major Treanor was not plain error. *United States v. Curtis*, 44 MJ at 140.

■ As to the statements to Ms. Hunter, there was an Article 39(a), UCMJ, 10 USC § 839(a) session, where admissibility of Ms. Hunter's testimony was litigated. Mrs. Cox testified that it was her decision to have therapy for the child. There was no government connection with this therapy. Based on this testimony, the judge ruled that Ms. Hunter's testimony "about any statements made to her by the [children] that were reasonably pertinent to her diagnosis of those children's problems and her treatment thereof" were admissible.

We hold that the judge's decision was not an abuse of discretion. The Government established that the children had an expectation of treatment and that the statements were made for the purposes of treatment. *United States v. Siroky*, 44 MJ 394 (1996) (and cases cited therein). Additionally, as mentioned in *Siroky*, Ms. Hunter mentioned that they needed to tell what happened to feel better about themselves. Thus, the statement to Ms. Hunter was admissible as segmented per *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Thus, Issue II is without merit.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX, Judge SULLIVAN, and Senior Judge EVERETT concur.

GIERKE, Judge (concurring in part and in the result):

I agree with the majority that admission of Major Treanor's testimony was not plain error. In my view, Major Treanor's testimony should be considered in terms of relevance, not the rules of professional responsibility. Major Treanor appeared before the court-martial as a witness, not as an advocate. As a witness, he came under the exception to the general prohibition against testimony by attorneys. The exception is cited in the majority opinion and conceded in the defense brief. 45 MJ at 155.

The objectionable portion of Major Treanor's testimony was that there was a "legitimate basis" for the charges. His testimony was offered to rebut a defense claim that Major Treanor had contaminated the victim's testimony by a suggestive pretrial interview. In my view, Major Treanor's belief that there was a "legitimate basis" for the charges is irrelevant to an allegation that he contaminated the victim's testimony. *See Hawai'i v. Baron*, 80 Hawai'i 107, 905 P.2d 613, 622 (1995) (trial court abused its discretion by not precluding the testimony of the screening prosecutor about alleged child abuse victim's credibility).

I am satisfied, however, that admission of Major Treanor's testimony was not plain error. His vouching for the witness was not emphasized in argument. To the contrary, trial counsel emphasized the absence of suggestive questioning. When a court member asked if there was any available testimony to help them decide who was telling the truth, the military judge instructed the members as follows:

> Members, the credibility of any witness, including Sergeant Cox [appellant], is up to the members. Military rules don't allow us to bring on witnesses who will give their opinions as to whether any particular person is telling the truth in this case, so that's going to be up to the members.

The focus of the case was on the demeanor and credibility of the witnesses and the circumstances supporting their credibility. No one suggested that the members should convict appellant because Major Treanor thought appellant was guilty. Accordingly, I am satisfied that any suggestion by Major Treanor that he believed the witness was not plain error.

Regarding Issue II, I agree with the majority that there is no plain error.